UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEVEN B. BOWLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:17-cv-00493-WTL-DML |
| | ) | |
| TINA JORDAN, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Denying Motion for Summary Judgment on Exhaustion**

**I. Background**

Plaintiff Steven B. Bowling ("Mr. Bowling") is a state prisoner currently confined at the New Castle Correctional Facility. Mr. Bowling filed his complaint on February 15, 2017, alleging in relevant part that on December 25, 2015, while confined at the Plainfield Correctional Facility ("Plainfield"), he broke his nose but defendant Nurse Tina Jordan refused to call him out on sick call to treat his nose. He further alleged that Nurse Jordan falsely documented that Mr. Bowling refused treatment on that day (and that she just wanted to relax on the holiday). He also alleged that he had filled out a Health Care Request form for a broken nose, pain, and anguish. In the Court's screening Entry, it allowed the claim of deliberate indifference to a serious medical need, under the Eighth Amendment, to proceed against Nurse Jordan. Dkt. No. 7.

Defendant Jordan filed a motion for summary judgment seeking resolution of the claim against her on the basis that Mr. Bowling failed to exhaust his available administrative remedies. Mr. Bowling opposed the motion for summary judgment and the defendant replied. For the

reasons explained in this Entry, the defendant's motion for summary judgment, Dkt. No. 18, is **denied.**

## II. Discussion

*A.     Legal Standards*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendant's burden to establish that the administrative process was available to Mr. Bowling. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### B.     Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Bowling as the non-movant, are undisputed for purposes of the motion for summary judgment:

As noted, Mr. Bowling was incarcerated at Plainfield during the time relevant to the incident alleged in his complaint. He was then transferred to Westville Correctional Facility ("WCU"), and later to New Castle Correctional Facility ("New Castle").

*1.  Grievance Process*

The Indiana Department of Correction ("IDOC"), Offender Grievance Process, Policy 00-02-301, § VII, has applied to Mr. Bowling during his incarceration. Dkt. No. 20-2. The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. *Id.* at § I.

The Offender Grievance Process consists of three stages: (i) an informal attempt to solve a problem or address a concern, which can be followed by (ii) submission of a written form outlining the problem and other supporting information, and the response to that submission, which can be followed by (iii) a written appeal of the response to a higher authority and the response to that appeal. *Id.* at § VI.

Under the Offender Grievance Process, an offender is required to attempt to resolve a complaint informally before filing a formal grievance. *Id.* at § X.A. To do this, the inmate must complete State Form 52897, OFFENDER COMPLAINT-INFORMAL PROCESS LEVEL. *Id.* at § X.A.C. If an inmate is unable to resolve his complaint informally, he may file a Formal Grievance by submitting a completed Form 45471, "OFFENDER GRIEVANCE," no later than 20 business days from the date of the incident giving rise to the complaint or concern. *Id.* at § XI.

If the inmate disagrees with the formal response at the facility level, he is permitted to appeal the response to the Offender Grievance Manager. The inmate may mark the line on the Level 1 Finding (i.e., Facility Finding) next to "Disagree" if he wishes to proceed to an appeal. *Id.*; Dkt. No. 20-1, ¶12. If an inmate receives no response within twenty (20) business days of

being investigated by the Grievance Specialist, he may appeal as though the grievance has been denied. Dkt. No. 20-2 at § XII.

The Grievance Manager must complete the investigation and submit a response to the appeal within fifteen (15) business days from the date of receipt. *Id.* at § XIII.

*2. Plaintiff's Grievance History*

Mr. Bowling filed three grievances at WCU after December 25, 2015, the date of the alleged incident: Grievances 92831, 92847, and 93155. Dkt. No. 20-3.[1]

a. *Grievance* #92847

The informal grievance most closely related to the allegations in this case was filed on August 1, 2016, in which Mr. Bowling complained that he was denied medical treatment for a broken nose. Dkt. No. 20-5, p. 1. He stated that he had submitted a Health Care Request ("HCR") but was never seen. He further stated that since then he had been attempting to review his medical records to no avail. He also complained that he had a bone spur on the side of his nose and he had sinus trouble from time to time. He could not name specific names because he had not made that discovery yet. *Id.*

The response to the informal grievance asked "on what day did you report a nose injury?" *Id.* It further stated that there were no records of a complaint of a broken nose nor were there any x-ray reports in the chart confirming a broken nose. *Id.* The response also stated, "There is no specific treatment for broken noses – ice packs for swelling – for most cases they heal on there [sic] own." *Id.*

---

[1] Grievance 92831 was filed at WCU on August 11, 2016, more than seven months after the alleged denial of treatment by Nurse Jordan at Plainfield. Dkt. No. 20-3. In Grievance 92831, Mr. Bowling complained that inmates in Disciplinary Restricted Housing did not receive the same privileges as other inmates. Dkt. No. 20-4. He did not appeal the response to that grievance. Dkt. No. 20-3. This grievance did not relate to the claim presented in this case.

After Mr. Bowling received the response to his informal complaint, he submitted a formal grievance, Grievance 92847, on August 10, 2016, and complained that he was denied medical care for a broken nose. *Id*. at p. 2. In the "date of incident" box he wrote, 12.25.15 – ongoing." *Id.* He stated that after he filed his informal complaint he reviewed his medical packet and found the HCR which states that a refusal of care form was completed, but this was not true. He also disputed the informal response that there was no specific treatment for a broken nose, noting that his treatment could not be determined if there was no evaluation or triage. *Id*. The relief he sought was fixing his bone spur and sinus congestion. *Id.*

Grievance 92847 was denied on August 12, 2016, with the response stating that there was no documentation that Mr. Bowling's nose was ever broken. *Id*. at p. 3. "We cannot simply take your word for it." *Id.* He was advised to submit an HCR to receive an evaluation.

Mr. Bowling disagreed with the response and filed an appeal. Dkt. No. 20-5, p. 5. In his appeal he stated that it was not until August 2, 2016, that he was able to discover the HCR he was trying to find. *Id.* The HCR stated that he had refused treatment, which is not true. *Id.* He also noted that he was seen by medical on September 6, 2016, regarding the complications from his broken nose and he was scheduled to have an x-ray taken. *Id.* The appeal was denied on September 14, 2016, fully exhausting this grievance. *Id*. at p. 7.

      b.     *Grievance #93155*

Mr. Bowling filed Grievance 93155 on September 1, 2016, and complained that medical had denied him copies of his medical records because his money was all spent on restitution he owed. Dkt. No. 20-6. Grievance 93155 was denied on September 1, 2016, and Mr. Bowling filed an appeal. The appeal was denied on October 6, 2016. *Id.*

*C. Analysis*

It is undisputed that Mr. Bowling completed the exhaustion process for Grievance 93155. Grievance 93155, however, complained about being denied copies of medical records, a claim which is not at issue in this case.

The relevant grievance in this case is Grievance 92847. Nurse Jordan argues that Grievance 92847 was filed well beyond 20 business days after December 25, 2015, and thus it was not timely filed. She also contends that nothing in the grievance put the prison on notice of when Mr. Bowling submitted the HCR or that he was referring to an incident in December 2015. This is not true. As noted, the formal grievance stated the date of incident was "12-25-15 – ongoing." Dkt. No. 20-5, p. 2.

Mr. Bowling does not dispute that he did not file a grievance within 20 days of the date that he alleges Nurse Jordan refused to see him. He argues that he could not file his grievance until after he had been able to review his medical packet. It was then that he learned his medical records allegedly reflected that he had refused to come to sick call on that day. He asserts that he was supposed to see his medical records in March 2016 at Plainfield, but there was a misunderstanding. He was not allowed to view the records until August 2, 2016, after he had been transferred to WCU.

Mr. Bowling had personal knowledge of the fact that he requested medical treatment on December 25, 2015, but he was not seen by medical staff at that time. As pointed out by the defendant, the Seventh Circuit has held that when an inmate waits to review medical records or other evidence to confirm or support his claim, this does not excuse the requirement to timely file grievances (even under Illinois law which allows a "good cause" exception to late filings). *Macon v. Mahone,* 590 Fed. Appx. 609 (7th Cir. 2014). However, Mr. Bowling correctly

responds that because the grievance was not rejected as untimely, the timeliness defense has been waived. "[A] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *see Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.").

Nurse Jordan further argues that the grievance did not clearly complain that Nurse Jordan (or any nurse) refused to call him out to sick call on December 25, 2015, because she wanted to relax on the holiday, but then later falsely wrote that he refused treatment. The only claim that was allowed to proceed in this case is the deliberate indifference Eighth Amendment claim. The supporting allegations for that claim are that Mr. Bowling was denied medical treatment for a broken nose when he requested health care on December 25, 2015, and was not seen. If Mr. Bowling had only alleged that the nurse had made false documentations in the medical records, this would not state a constitutional claim. In addition, a nurse's alleged wish to relax on a holiday does not support a stand-alone claim. The Court finds that Mr. Bowling sufficiently put the prison on notice of his claim that he requested to be seen for what he believed was a broken nose on Christmas Day and medical refused to see him. The issue of timeliness is waived

because the prison did not reject the grievance on that basis. Mr. Bowling completed all three steps of the grievance process relating to Grievance #92847.

### III. Conclusion

For the reasons set forth in this Entry, the defendant's motion for summary judgment, Dkt. No. 18, must be **denied.** There are no disputed questions of fact, so there is no basis on which to set this for an evidentiary hearing. Rather, Mr. Bowling completed the grievance process and the affirmative defense of failure to exhaust administrative remedies is **rejected.**

The Court will issue in a separate Entry a pretrial schedule to govern the further development of the action on the merits.

**IT IS SO ORDERED.**

Date: 11/22/17

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

STEVEN B. BOWLING
113869
NEW CASTLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Electronically registered counsel